You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. I am Jonna Hanson. I am here to argue on behalf of the appellant, Louis Jean-Louis. I wanted to start with the proposition that we're dealing, I think, with two separate standards of review here. The first is abuse of discretion for the denial of relief under Rule 60B, and its appellant's position that the trial court abused its discretion in summarily denying relief under Rule 60B, especially if we look at the fact that the trial court completely failed to address a number of the prongs that are required in the Bateman analysis. There are four prongs, and to be quite frank, as I look at the record that I looked at, it was the plaintiff in the case, and expressed that irritation at some length in its order denying the motion for relief, but I don't see the level of the court's irritation with the plaintiff as being a ground for denying relief when the court failed to look at the other factors and set forth its analysis as to why the other factors didn't weigh in on this. And one of the factors in the Bateman analysis is prejudice to the plaintiff in this particular case, and the fact that no relief was granted is very prejudicial. Can I ask you this? If, as I understand it, the district court then went on to resolve basically on the merits, the motions to dismiss filed by all the other defendants? Correct. If we ended up agreeing that that ruling was correct, would it basically obviate any need to resolve this issue with respect that you've just raised? I don't think so. What would be left for the district court to do on remand if we said, yes, you abused your discretion in not, I guess, granting him leave to file this? Correct. But we then go on to resolve on the merits, the fact that there's no legal merit to any of the claims. Wouldn't that end the case? I suppose that it would, but I don't think that that would be the correct position for the court to take in light of the subsequent decision by the California Supreme Court. I think that that has changed the analysis on the merits, and that's why I started with the proposition that you take a look at the 60B on abuse of discretion, but the court reviews de novo the complaint on its merits. Yeah. All I was saying is that maybe could you pivot then to the merits, because it seems like if we don't agree with you on that, then it's neither here nor there on the 60B. That's fine, but I was hoping that the court would do both, actually, say on remand, not only did you abuse your discretion by failing to set forth the abatement factors, but even if we take a look at this de novo on the substantive issues, we think the plaintiff is entitled to his stay in court. The way that — I'm sorry to interrupt. I just want to be clear, though, because I'll tell you, I'll lay my cards on the table. I'm not persuaded by your arguments on the merits, so I just want to get an understanding. If you don't persuade me or you don't persuade my colleagues to move off that position, and I don't know where they are, but that's where I'm at, I'm just trying to figure out, is there something else that we do need to decide on? No. Okay, that's all I have. I think the case is over at that point. Okay. Because the fact of the matter is — Take it on to the merits. Yes. I think that what happened when the California Supreme Court decided the subsequent case in February of 2016, Yovanovitch, I hope I'm saying that correctly, is that the court opened the door in a place where the door had never been opened. And I think that the standing argument is the linchpin of all of the orders underlying in this case. I mean, there's seven underlying orders, six on the merits, essentially, one on the motion for relief. And in one of the orders, the court even goes so far as to say that the analysis of all the causes of action is based on this linchpin argument about standing. And the court, in one of the orders, quotes a language saying that we don't believe that the California Supreme Court, if and when they ever take up this issue, will agree with the Glaske line of thought. Well, they were wrong about that, because the California Supreme Court did essentially agree with Glaske. On a very narrow issue that is — it seems to me the court explicitly left open about three or four other issues that you would need to succeed on to go forward here. And I don't — But that's the point, I think, Your Honor. The court took great pains, I think, in the not address any of the following, and they enumerated them. And granted, this case falls under the ones that was not decided, far be it from plaintiff's attorneys to not drive a tank through a crack in a door. I mean, that's, you know, what the realm of new law is made of. But it seems to me that when the California Supreme Court takes great pains to lay out that which is not addressed, it is saying implicitly that it is leaving those matters open to be addressed. Right. And that's exactly what's happening in this case, and I think many others like it. Because if you look at this against the backdrop, what happens is you have, you know, governmental sanctions, governmental fines being levied against these banks. You have consent decrees being issued. But the relief for the individual homeowners who were placed behind the eight ball by this kind of conduct has been very limited. And largely, it had been because there was no standing to address this. Can I ask you another question, just in terms of the scope of the argument? Correct. Do you concede that every single one of your client's claims turn on his having standing to challenge the, I guess, the violation of the terms of the PSA? No, I think that certain of the claims would exist independent of that. In particular, my view is that the RICO claim would exist independent of that. Why is that? Because if you're alleging that the fundamental conspiracy is to set up a system so that the individual homeowners can have standing to challenge what's happening, and that essentially the way that this is operating is to deprive the individual homeowners of any sort of day in court, and that the only thing that can happen is some sort of governmental involvement on a fine or penalty basis, then I think that certain of the claims underlie the PSA. Any others besides the RICO claim that you think independently survive? I think the consumer recourse laws would have the same fundamental premise. I mean, the California courts have ruled repeatedly that the reach of the consumer laws in California is extraordinarily broad, and it's intended specifically to protect individual consumers. And I think what we have here are banks undertaking a successive line of assignments such that, especially when Glaske was not the law in California, so that individual homeowners were deprived of standing to bring these cases. And I think that were the court to remand this on substantive issues, and by the way, I would say that if the court finds that there was at least room for the plaintiff to argue standing in this particular case, all of the causes of action exist independent of the standing argument. And with the court's permission, I'd like to reserve my remaining time for rebuttal. Okay. Thank you. Thank you. We'll hear from the other side. Thank you. May it please the Court, Jonathan Weiss on behalf of the appellee Deborah Brignac. I'm also going to address on behalf of the other appellees the lynchpin question of standing, which applies to all of our clients. I also wanted to reserve any time as the court finds necessary for the court to address questions to the other appellees that are specific to them. But I do agree with you, Judge Watford, that the threshold issue here is the standing issue. And I think Judge Barat was correct in his order dismissing the case with prejudice that everything rises and falls on this issue of whether or not the borrower has standing to challenge the validity of the assignment, because all of the claims effectively are premised on that. So you disagree with your opponent's assertion? I disagree. And I can talk about the RICO question in a minute. But I just wanted to emphasize why it is the case that Jean-Louis simply does not have standing. Appellant's counsel said that the door was opened by the California Supreme Court in the Ivanova case. But that's actually not the case. And Judge Watford, as you noted, that was a very narrow decision. The California Supreme Court in that case took pains to carefully say that its holding was a narrow one and that its holding was limited to the post-foreclosure sale context. It expressly disclaimed reaching the issue of whether or not this narrow standing exception applied in the pre-foreclosure sale context, which is the context we're dealing with here. And it actually, you know, was careful to say its holding should not be taken to suggest that it applies in the pre-foreclosure sale context. Well, I guess I thought the other, the most significant thing that it left open is that it didn't even resolve the circumstances under which a transfer, a defective transfer would render the assignment void as opposed to voidable. That's correct. And she, or Mr. Jean-Louis, would need to establish that the defect rendered the transfer void, right? That's correct. And we're under Delaware law, I assume? And I guess I haven't seen anything under Delaware law that suggests that it would be void. That's correct. The first amendment complaint alleges that the trust in question was formed under Delaware law. And there's an allegation in the complaint that this post-closing transfer to that Delaware trust was void. But that's a legal conclusion. The board doesn't have to credit that as true. And there's absolutely no authority that's cited by the appellant, any Delaware law or Delaware statute, that would suggest that such a post-closing transfer to a Delaware trust somehow rendered that transfer void as opposed to merely voidable. Do you have affirmative authority? Yeah, there is affirmative authority. I mean, I would submit that the issue, frankly, is that the court has never made the argument. But there is authority in Delaware for the proposition that there's a much more, there's much more latitude given by Delaware courts with respect to this void, voidable distinction. And that's, in 2013, the Delaware legislature actually amended the Delaware corporations, general corporations law to, this is at sections 204 and 205, to allow for a company to ratify a defective corporate act, even if that were a void defective corporate act. So the Delaware legislature saw fit to actually allow the correction of so-called foot faults, even if they, you know, on their face would render the transaction or assignment void. So there's actually greater latitude in Delaware on this point. But there's also this threshold. As on many other points. I'm sorry? As on many other points. As on many other points. And the other issue, though, is the fact that the narrow exception in Ivanova does not apply pre-foreclosure. Because the first California intermediate appellate court to address this issue in a published decision is the Satterbach case, which we cited to the court in our 28J letter. And in Satterbach, the court squarely addressed this issue and said that Ivanova's narrow exception to standing did not apply in the pre-foreclosure sale context. And there was a good reason for that. The court cited to Jenkins, excuse me, and also to Gomez for the proposition that allowing a preemptive pre-foreclosure challenge, as Mr. John Lee makes here, would effectively allow the interjection by the courts into this non-judicial foreclosure regime, statutory regime that was established by the state legislature. And that would certainly upset one of the key purposes of that regime, which is to allow for the quick and efficient and cost-effective resolution of foreclosures. The irony, of course, in this case is that it's not the poster child for that rationale. Because as Mr. John Lee conceives, he's been in default on his note and mortgage since 2008. So here we are 10 years later. But I think it underscores the need for clarity on this point. And Satterbach is controlling authority in the intermediate appellate court level for this point. I would also just note that the California Supreme Court had an opportunity to revisit this issue. Satterbach petitioned for review of that decision. And Satterbach also requested the depublication of that opinion. And in, excuse me, in July of 2016, the California Supreme Court declined to review that decision and declined to depublish the opinion. So I would submit that the tea leaves suggest that the California Supreme Court does not wish to disturb that holding, that the California Supreme Court countenances that holding. And that's the controlling decisional law that this court needs to look to under the Ninth Circuit's test in Ryman for applying state law. In the absence of any clear view on this from the California Supreme Court, you would work to the intermediate appellate court. And here we have Satterbach. So I think on both counts, there's absolutely nothing set forth, legal argument or authority or otherwise, that under Delaware law, this transaction would be void as opposed to voidable. But even more fundamentally, this whole framework doesn't apply in the context of a pre-foreclosure sale. What about the other claims that she, that your opponent raised as being independent of this standing issue? I would, I would direct the court that the appellant's counsel suggested that the RICO claims somehow stand separate and apart from this standing issue, which involves the validity of the assignment. Well, let's take a look at their reply brief. If you look at page 15, Jean-Louis goes through the predicate acts for the RICO claims. And each of, there's an A, B, C, and D on pages 15 and 16. Each of these refers to the allegedly fraudulent or defective assignment. So we have the discussion in section A of the modificational trial and trial payments on a void note and deed of trust. In section B, we have a discussion of a forged assignment. In section C, we have reference to the fact that the deed of trust had not been duly assigned. And in section D, we have reference to a counterfeited assignment. These all are premised on the very thing that lies at the threshold here, which is whether Jean-Louis so much as has standing to challenge the validity of that assignment. And we would respectfully submit that he simply does not. And if he does not have that standing, then all of his claims fall away. What about the FDCPA claim? Because that would, on its face, wouldn't seem to depend upon standing to challenge this PSA violation. Yeah. And perhaps I should defer to my co-op police against whom the FDCPA claim actually lies. But I would just say, I mean, I think it is premised on the assignment to the extent that the whole point is that the foreclosing entity and the servicers didn't have any authority to collect on the debt because they were never properly assigned the note and the mortgage by virtue of which they could engage in such activity. But if you'd like to hear from my co-op police on this point, I'm happy to yield the floor. Before any yield, can I ask you a question about the trial court's June 17, 2014 order? I don't see where the trial court judge applied the so-called bait men or the pioneer factors other than the fourth factor with regard to whether or not the movement acted in good faith and the trial court appeared to be not believing the reasons offered by the plaintiff, but didn't really apply any of the other factors that I can see. What's the significance of any of that? Well, I think as Judge Watford pointed out earlier, even if there was an abuse of discretion, that's obviously a difficult standard here in all events. But even if there was an abuse of discretion, it wouldn't matter because on the merits, the threshold issue doesn't cut their way and all of the claims are premised on that threshold issue. So it really doesn't matter. But if the court wanted to hear more about the Rule 60B issue, counsel for JPMorgan Chase, against whom that issue actually lies, we'd be happy to address the court on that if you'd like. That's fine. I think we'll also. Thank you. Okay. Thank you. You have some time left. Very briefly, thank you, Your Honors. I would like on the Consumer Remedies Act to refer the court to a case we cited, Hernandez v. Hilltop Mortgage, which expressly held that loan processing and underwriting are consumer services under the Act. So that's part of our claim that it stands separately apart. Your Honor specifically asked about the FDCPA claim, and there the First Amendment complaint alleges that respondents were attempting to collect loans under false pretenses. But that turns on whether the assignment was valid, right? I think it does. But then we come back to the fact, in Delaware law notwithstanding, this is a California consumer entering into contracts in California. And if you look at Civil Code Section 3412, and I understand that the 28J letter took the position that this, that the contract was not void, necessarily, and that Yovanova had nothing to do with voidable contracts. It only had to do with void contracts. But if you look at Civil Code Section 3412, it says, a written instrument, and then goes on to say, where there's an apprehension that if left outstanding may cause serious injury to a person against whom it is void or voidable may, upon his application, be so adjudged in order to be delivered up or canceled. So I think that in this particular case, whether the instrument's void or voidable, it doesn't matter under the statutory construct in California for setting aside the kind of instrument that we have here, documents that are being robo-signed and then notarized by somebody who has no, there was no person before them presenting identification or known to them. The documents were being signed by a robot. So it is exactly this kind of case that the Court in Yovanova left the door open for. If they had wanted to keep the remainder of the door shut, they would have slammed it, in my opinion. But they did not do that. They specifically said, we do not reach these. And the plaintiff and appellant in this case would like the opportunity in the lower court to make those arguments and reach that which the California Supreme Court did not decide. Thank you.
judges: Kozinski, Watford, Bennett